**JULIA COSMETICS, INC.**

v.

**NATIONAL BROADCASTING COMPANY, INC.**

Civ. A. No. 16826.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Feb. 27, 1973.

John B. Hussey, Shreveport, La., Arnold, White & Durkee, Houston, Tex., for plaintiff.

Cicero C. Sessions, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., for defendant.

## OPINION AND RULING

DAWKINS, Chief Judge.

Jurisdiction of this matter is predicated upon diversity, the plaintiff being incorporated under the laws of Louisiana, and defendant being incorporated under the laws of Delaware. The amount in controversy exceeds $10,000, exclusive of interest and costs.

Plaintiff, Julia Cosmetics, Inc., was marketing a line of cosmetic products under the trade name "Julia" and had filed an application for registration of

such as a trade-mark. NBC advised Julia that it was the sole and exclusive merchandiser and licensor for all products connected with the "Julia" television program. It also requested that plaintiff discontinue any unauthorized use of such trade-mark. Thereafter, the parties entered into negotiations which resulted in NBC's licensing plaintiff to use such trade-mark in its business.

Subsequently, Julia was advised by counsel for Miss Diahann Carroll, star of the "Julia" television program, that it could not proceed in accordance with its agreement with NBC unless it also secured her approval for all packaging, products, and other aspects of its merchandising program. Julia also was advised that Miss Carroll had disapproved all cosmetic and packaging samples forwarded to her by both plaintiff and defendant. During this period of time NBC consistently had refused to approve any item submitted by Julia for approval. As of this date, Julia has been unable to introduce its new product line.

Plaintiff alleges that its execution of the license agreement by Julia was procured by fraud; and, in the alternative, alleges that NBC wilfully, wantonly, and maliciously has failed and refused to perform in accordance therewith, thereby breaching the licensing agreement.

When plaintiff filed its complaint, it requested that this Court appoint counsel for plaintiff, John B. Hussey, to serve process on defendant, NBC, by mailing a certified copy of the citation and the complaint by registered or certified mail under LSA–R.S. 13:3204. This request was granted and it was so ordered.

Defendant filed motions to quash service, set aside the return of service, dismiss for lack of jurisdiction, and for a rescission of the *ex parte* order of June 2, 1971; and, alternatively, it moved for certification of an interlocutory appeal.

The controlling statute is the Louisiana "long-arm" Act which provides in pertinent part:

"Section 3201. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

(a) transacting any business in this state;

\* \* \* \* \* \*

(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state, if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; or

\* \* \* \* \* \* "

"Section 3202. When personal jurisdiction over a nonresident is based solely upon R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him."

◼ As to the issue of jurisdiction, there are two basic questions presented: the first is whether Louisiana's Legislature has extended the reach of its long-arm statute to nonresidents in the position of NBC; and, second, if it has been so extended, is this extension consistent with due process?

Although it may be unclear whether the Louisiana statute was intended to go to the permissible limits of due process in the exercise of *in personam* jurisdiction in certain contract cases, Benjamin v. Western Boat Building Corp., 472 F. 2d 723 (5th Cir. 1973) (the Court cited Riverland Hardware Co., Inc. v. Craftsman Hardwood Lumber Co., 259 La. 635, 251 So.2d 45 (1971), wherein the Louisiana Supreme Court concluded it did not have jurisdiction over a nonresident buyer), we have concluded, where NBC is not in the position of a buyer, it is transacting business within the State of Louisiana. A straightforward reading of the statute indicates that the Legislature has extended the reach of its long-arm statute to nonresidents in the position of NBC. This conclusion is

supported by the redactors' comments to this jurisdictional statute:

"R.S. 13:3201 through 13:3207 were adopted on the recommendation of the Louisiana State Law Institute to permit the courts of this State to tap the full potential of jurisdiction *in personam* over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 . . . and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 . . ."

Consequently, we must determine if this extension is consistent with due process.

This license agreement was entered into and became effective July 27, 1970, and contains the usual provisions of such contracts. It sets forth that the licensor has the right to the name, character, symbol, design, likeness, and visual representation of "Julia," as portrayed by Diahann Carroll. The agreement also provides that the name has been used over the facilities of numerous stations in radio and/or television broadcasting and in allied fields; in promotional and advertising material in different businesses, and is well known and recognized by the general public and associated in the public mind with the licensor. The term of the license is for one year unless terminated within the provisions of the agreement, and from year to year thereafter during network telecast. The royalty agreed upon is 5% of all net sales by licensee. The 5% royalty is to remain in effect only as long as the "Julia" show remains as a network telecast shown in prime viewing hours. Provision was made that if the show is removed from network telecast and put into syndication, or it remains a network telecast but is not televised in prime viewing hours, the royalty would be reduced to 2½% of the licensee's net sales. Additionally, the agreement contained a provision whereby defendant was to approve or disapprove the articles submitted for distribution. However, this approval was to be obtained from licensor by licensee prior to distri-

bution of the product and was limited to matters which related directly upon or affected the name, the character, symbol, design, likeness and visual representation of "Julia," as portrayed by Diahann Carroll. Such approval was not to be withheld unreasonably.

The affidavits submitted disclose that the negotiations were conducted entirely by interstate telephonic communications and through the United States Mails except for one personal encounter when plaintiff's president visited New York. No one employed by or acting on behalf of NBC ever came to Louisiana in relation to the negotiation or execution of the license agreement. It finally was consummated in New York when it was executed there on behalf of NBC after already having been signed on behalf of plaintiff. The agreement provides that it is to be construed in accordance with the law of New York.

With the elements of the agreement and the facts leading to its execution before us, we now turn to examination of NBC's activities in Louisiana. Defendant's statements of such activities are uncontradicted. NBC is a Delaware corporation with its principal place of business in New York. It is engaged primarily in radio and television broadcasting activities. It owns and operates five television and six radio stations, none of which is located in Louisiana and none of which includes Louisiana within its conventional broadcast range. Defendant also distributes television and radio programs for broadcast throughout the nation. NBC has entered into contracts with six television and seven radio stations located in Louisiana for broadcasting of NBC network programs. NBC has no ownership or management interests whatsoever in any of these stations. They are independently owned. The network programs are transmitted to these Louisiana stations through facilities which are owned and operated by American Telephone & Telegraph Company. Only a limited number of these programs originate within this State; and these are limited solely to news sto-

ries and special events of national interest, and emanate and originate from a local station.

Employees and personnel of NBC come to Louisiana only sporadically, and then for limited periods of time. Defendant engages in a small amount of advertising of its programs in Louisiana, and then only in conjunction with the local stations here.

NBC does not own, nor does it lease, any property in Louisiana. It has no offices in Louisiana. None of its directors, officers, or employees are stationed or reside in Louisiana. There are no salesmen on its behalf in Louisiana. NBC has no telephone listed in Louisiana. It does not maintain any books, records, bank accounts, nor are stockholders meetings held in Louisiana, and none of its internal affairs are carried on in Louisiana.

Defendant has never qualified to do business in Louisiana with its Secretary of State. It has no registered agent for service of process in Louisiana, nor has it authorized the Secretary of State to accept service of process.

The licensing and merchandising of properties and rights owned or controlled by NBC are handled through the Enterprise Division of NBC (Enterprise) which is a separate nonincorporated division, independently operated. This Division has no office or employees, agents, or representatives stationed in or residing in Louisiana, nor does it advertise or solicit advertising in Louisiana. No one employed by or acting on behalf of Enterprise has ever come to the State of Louisiana in connection with any licensing activity of that Division. Enterprise had no previous contacts with plaintiff before this agreement was entered into. Neither NBC nor Enterprise ever has had any licensing or merchandising agreements with any other Louisiana resident, firm, or businesses prior to the licensing agreement with the plaintiff, except for agreements relating to so-called "affiliate" stations.

This controversy arises out of the licensing agreement between the parties and is based upon the grant of the trademark by NBC. Julia alleges that it initiated an extensive, expensive program directed toward the formulation and development and packaging of a new line of quality cosmetic products to be identified by and with the "Julia" television character and program, including the marketing of that product line.

Julia also endeavored to obtain Miss Diahann Carroll's personal endorsement of this cosmetic line. Subsequently, Julia was advised that others, particularly Miss Carroll, were asserting rights which could be inconsistent with Julia's agreement with NBC. Julia also was making an effort to secure NBC's approval of the quality and style of the cosmetic products and packaging pursuant to the agreement. However, such efforts were unsuccessful. Julia alleges as a result of this activity it has been unable to introduce its new "Julia" products as of this date.

It contends it has been severely injured by NBC's activities relating to this agreement, and seeks monetary damages for this.

The landmark decision after Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), delineating the test as to what constitutes a contact with a State that will serve as a basis for the exercise of *in personam* jurisdiction is International Shoe Company v. State of Washington, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There the Court said:

" . . . [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at page 316, 66 S.Ct. at page 158.

The two most pertinent Supreme Court cases coming after *International Shoe, supra,* are McGee v. International

Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). Three criteria emerge from this jurisprudence for determining *in personam* jurisdiction based upon a single act:

" . . . First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir., 1968) citing Curtis Publishing Co. v. Birdsong, 360 F.2d 344, 352–353 (5th Cir., 1966).

The Fifth Circuit has recently stated that:

"Analysis of our own cases reveals that, while very little purposeful activity within a state is necessary to satisfy the minimum contacts requirement, we have, nevertheless, unequivocally required *some* activity by the defendant before permitting the exercise of *in personam* jurisdiction, under a state 'long-arm' statute, the jurisdictional touchstone being the presence of sufficient in-state business activity to indicate a purposeful enjoyment of the benefits and protections of that state's law." *Benjamin, supra,* 472 F.2d at p. 726.

NBC admits activities in this State to the extent described above. But it asserts lack of jurisdiction based upon the contention that the cause of action sued upon is not a cause of action arising from, connected with, or related to any of the activities that it carries on in this State. Defendant urges the proposition that telephonic communications and communication through the U. S. Mails and consummation of the contract in New York does not invest this Court with personal jurisdiction over it. If this were true, then NBC argues that the licensing agreement is in no way connected to its activities in this State nor arises from these activities, and, consequently, jurisdiction is lacking upon that ground. It also asserts that even if they are related to the activities such are within the protection of the First amendment of the Constitution and a more strenuous test is required for personal jurisdiction concerning such activities. Here, it urges the test has not been met. Finally, defendant asserts that to subject it to the jurisdiction of this Court in this State would violate the Commerce Clause of the Constitution.

■ To make an already lengthy opinion shorter, we will not discuss defendant's first argument concerning telephone communications and use of the mail (there being some question whether this alone would suffice as a ground for exercise of *in personam* jurisdiction. Lewis, Suing A Nonresident—The Reach of Louisiana's Long-Arm Statute, 19 La. B.J. 205 (1971)). The clear fallacy in defendant's argument upon its second contention readily can be demonstrated: Defendant assumes that there is no connection at all where a substantial one actually exists. This whole licensing agreement and the relationship between plaintiff and defendant is based solely upon the fact that the TV show "Julia" is distributed by NBC to its affiliated television stations in Louisiana which then broadcast the program within this State. There would be no need for such an agreement if there were not such a show distributed into this State. The value of this is demonstrated in the agreement. The royalty is reduced when this show is taken out of prime time. The rights in the agreement are limited to the combination of the name of the television show "Julia" and the character, symbols, design, likeness, and visual representation of "Julia" as portrayed by Diahann Carroll. Also, the

rider to paragraph 4 of the agreement states:

"Licensor recognizes the great value of the good will associated with licensee's trademark Julia, as applied to cosmetics for black people and acknowledges that the trade-mark and all rights therein and good will pertaining thereto belong exclusively to licensee, and that the trade-mark has a secondary meaning in the mind of the public."

The sole basis for using this name and trade-mark is that it is readily identifiable with a character of a television program distributed by NBC and also provided for telecast over television stations in Louisiana with which NBC has contracts.

Therefore, we readily conclude that the cause of action asserted in this controversy arises from and directly is related to the licensing agreement which is based solely upon the activities of NBC within the State of Louisiana. It readily can be assumed that programming is what NBC is to provide these stations under these contracts. This determination disposes of the second criterion announced in *Southern Machine Company, supra*. The first requirement obviously has been fulfilled. NBC has purposely availed itself of the privilege of transacting business in Louisiana by having contracts with various stations in Louisiana and distributing and providing these stations with live and taped shows to broadcast in this State, which activity is the underlying basis of this controversy.

The course of conduct of defendant set forth above shows that there is amply substantial connection with Louisiana to make it reasonable to require NBC to submit to the jurisdiction of the Courts of this State. The contract is with a resident of Louisiana and the State's interest in resolving a suit based upon the contract and brought by the resident cannot be doubted. *Southern Machine Company, supra*, 401 F.2d at page 385. This agreement contemplates a continuing relationship between plaintiff and defendant. It is apparent that NBC thought it could profit from such an arrangement and a not insubstantial portion of its profits would be derived from sales in Louisiana.

". . . What 'minimum contacts' with a state will render such a publisher amenable to service of process is dependent to a large degree upon the equities of the situation. . . . When this broad policy is applied to specific facts, decisions are rendered which guide future tribunals in deciding similar questions as they arise. . . . Approaching our present case in this spirit, we are convinced that 'notions of fair play and substantial justice' require rather than foreclose [*in personam* jurisdiction]. . . ." Curtis Publishing Company v. Golino, 383 F.2d 586, 588–589 (5th Cir., 1967).

". . . NBC's primary business is supplying certain types of services or products, to wit, radio and television programs. These it supplies through the facilities of common carriers to buyers, radio and television stations, throughout [the State]." Hoffa v. National Broadcasting Company, 213 F.Supp. 895, 896 (E.D. Mich., 1963).

These programs are prepared for a nationwide audience. Under defendant's contention, NBC would be allowed to insulate itself from suit under all licensing agreements in every State of the Union except the States of New York and Delaware. To facilitate this insulation, NBC could carry on all its negotiations, as was done here, through telephonic communications and mail and have the licensee sign the agreement in his home State and then forward it to New York for signature by NBC.

". . . No doubt such a course would be motivated primarily by a desire to avoid legal actions brought in the other states where the publications were circulated. Clearly it would not comport with the notions of fair play and substantial justice to allow a business enterprise, whose over-

riding business purpose is maximum exploitation of the national market, to be free from suit as a matter of law in all states but that of publication simply because physical contacts with the other states had been reduced to a minimum. . . ." *Golino, supra,* 383 F.2d at p. 591.

The legal argument urged by defendant would allow NBC to disregard and, indeed, violate such agreements with knowledge that a plaintiff or licensee would be faced with the high cost of litigation in a foreign state. Notions of fair play and substantial justice support the right of the State to require a corporation to answer non-frivolous claims arising out of its contacts with the State, even though it has managed to reduce its physical presence in a State to a minimum. *Golino, supra.*

■ Defendant's First Amendment contentions likewise are without merit. NBC argues that First Amendment considerations require a greater showing of contact in order to satisfy due process requirements for jurisdiction. It relies upon New York Times v. Connor, 365 F.2d at 567 (5th Cir., 1966). In *Golino, supra,* the Fifth Circuit stated that

". . . the language in *Connor* does not stand for the proposition that, because of the constitutional protection of the dissemination of ideas, a publisher may never be sued for libel in a state other than that of publication. Rather, *Connor* indicates that first amendment considerations are a factor relevant to a determination of the jurisdictional question; and, the discussion of that factor in *Connor* must be viewed in its factual context."

In that case, the Court also stated that in *Connor* it was concerned with a newspaper, while in *Golino* the Court was concerned with a national magazine. Both involved libel actions. The determining consideration in both cases was the chilling effect a law suit would have upon the distribution of publications expressing views unpopular in certain sections of the country. The conclusion reached in *Golino* was that a law suit in a distant jurisdiction would not have such a chilling effect upon a national magazine. NBC is a national broadcasting company and this is not a libel action; *a fortiori,* we conclude that defendant's First Amendment argument is inappropriate. This action is certainly not one that will hinder the flow of NBC's programming into this State.

■ Defendant's next contention is that "to compel defendant to submit to jurisdiction in Louisiana under the facts of this case would palpably constitute an unreasonable burden upon interstate commerce forbidden by the United States Constitution. Article 1, Section 8, Clause 3, grants to Congress the power to regulate interstate commerce." Here defendant again errs in assuming that this Court is exercising jurisdiction based solely upon incidents conducted outside Louisiana. As we have noted, the license agreement and the action thereon arose from the type of activities defendant conducted in this State. Consequently, we find no undue or unreasonable burden has been placed on interstate commerce. McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Florio v. Powder Power Tool Corporation, 248 F.2d 367 (3rd Cir., 1957); Shippers Pre-Cooling Service v. Macks, 181 F.2d 510 (5th Cir., 1950), cert. den'd, 340 U.S. 816, 71 S.Ct. 45, 95 L.Ed. 599.

NBC was not engaged solely in interstate commerce. It actually was transacting or carrying on business within Louisiana at the time this suit arose, so as to make it amenable to service of process by the manner in which it was made. As the Fifth Circuit stated in *Macks, supra,*

". . . The leading Supreme Court cases of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 . . . and International Shoe Company v. Washington . . . clearly establish that this

type of service in such cases does not unduly burden interstate commerce, but meets all the essential requirements of due process."

■ Defendant next urges that our *ex parte* order of June 2, 1971, allowing plaintiff to serve the defendant by certified mail was unauthorized. We find it difficult to understand its argument on this point. The long-arm statute provides for service of process in Section 3204:

"A certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by counsel for the plaintiff to the defendant by registered or certified mail, or actually delivered to the defendant by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general jurisdiction."

The underlying reason for this provision is stated in the redactors' Comment (b) (last sentence) under Section 3204: "So, to provide uniform methods of serving process which would be valid as to all types of nonresidents a different approach had to be followed." (Before this provision was adopted, service of process was had on foreign corporations or nonresidents with the implied appointment of the Secretary of State as the agent for service of process.) Defendant concedes that under Rule 4(e) of the Federal Rules of Civil Procedure service must be made—not pursuant to a statute of the United States, but, rather —according to a statute or rule of Court of the State in which the District Court is held. Here the rule provides for service under the circumstances and in the manner prescribed by the State statute.

As noted, LSA R.S. 13:3204 provides for service by registered or certified mail by counsel for plaintiff. All this Court did was appoint counsel for plaintiff to serve the defendant as provided by Rule 4(c). This action is in complete accord with the Louisiana statute relating to service. Process was served by counsel for plaintiff as provided by 13:3204.

"However, when the applicable state law permits service . . . by mail . . . the manner of service seems to be involved rather than the identity of the person making service." Wright & Miller, Federal Practice and Procedure, § 1112 at p. 463 (1969)

■ Finally, and alternatively, defendant moves us for certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Fifth Circuit has pointed out that

". . . '[e]ach application is to be looked at then in the light of the underlying purpose reflected in the statute,' . . ." Ex parte Tokio Marine & Fire Insurance Company (Ex parte Aetna Casualty & Surety Company), 322 F.2d 113 (5th Cir., 1963).

That Court has required, however, that for use of this sometimes useful device there be a controlling question of law and that such immediate appeal materially will advance the ultimate termination of litigation. Hadjipateras v. Pacifica, S. A., 290 F.2d 697, 702 (5th Cir., 1951). This reasoning was derived from the statute itself, 28 U.S.C.A. § 1292(b):

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . ."

Grants of applications for this certification are the exception rather than the rule. It is our clear opinion that here there is not involved a controlling question of substantive law as to which there is substantial ground for difference of

opinion. Therefore, the application for such certification is denied.

Accordingly, for the reasons stated, defendant's motions are denied.